UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA
              Plaintiff,                 CRIMINAL NO. 22-CR-20504

v.                                  HON. JONATHAN J.C. GREY

AWS MOHAMMED NASER
              Defendant.

---

**GOVERNMENT'S RESPONSE OPPOSING DEFENDANT AWS
NASER'S MOTION TO UNSEAL EXHIBITS (R. 125) AND
RECLASSIFY DISCOVERY MATERIALS (R. 127)**

---

      "You mentioned that there are a bunch of exhibits that are
interesting, is there anything you can, you know, share about that
or summarize what's in those?"

Journalist Trevor Aaronson to Defendant Aws Naser in a recorded call

on April 1, 2024.[1]

      "Okay so I guess I could because I'm really gonna try to get those
exhibits unsealed or at least made part of my general discovery so
I can share them."

Naser's response to the journalist.

---

[1] Since February 2023, Naser has communicated with Aaronson 50
times. Most of these communications are jail calls.

Naser remains focused on creating a documentary about his case instead of defending it.[2] In addition to his frequent promises to the journalist that he would seek to have documents unsealed and discovery moved out of the protections of this Court's protective order so he could share them, he has emailed the journalist to "discuss the terms of the documentary."[3] His motions to unseal exhibits, R. 125, and move certain discovery from "sensitive" to "general," R. 127, work toward that same goal.[4] They are a distraction from the real issues in this case, serve no public purpose, and will not advance this case.

---

[2] For instance, on March 7, Naser emailed the journalist, "I would like to discuss the terms for the documentary." On April 24, 2024, Naser told his brother that he and the journalist were working on a documentary and Naser needs a "media lawyer" to help hash out the terms. The journalist emailed Naser on April 29, 2024, "When we talk next, I can tell you more about how the documentary is shaping up and the plan forward."

[3] On April 12, 2024, Naser emailed an associate, "I'm going to do a documentary with Trevor Aaronson. 'How the FBI Manufactures Terrorisom.' (sic)."

[4] On March 7, 2024, Naser emailed the journalist, "I recently received 2 more discovery packets very interesting material. There are 2 more on the way. and currently working on recovering the rest from the Protective order." On March 26, 2024, he emailed: "…the government did not agree with the request to remove many of the discovery from the secret files. So I'm filing a motion on that…"

In his motion to unseal (R. 125), Naser claims unsealing is necessary because the parties will need to reference exhibits freely at the hearing and to maintain the right to a public prosecution. But the sealing order does not affect counsel's use of these exhibits at the hearing. As explained below, some of these documents would be improper to use with witnesses. And the hearing itself will be public.

Most of the materials appended to the motions would be inadmissible as exhibits at trial. Some are normally not even discoverable and were only provided to the defense with the understanding that they would be sealed and would make the hearing more efficient. The unsealing of these documents would harm witnesses and discourage them and future witnesses from being open in interviews, with no public benefit to counteract that great harm.

For the reasons set forth in this response, the Government respectfully requests that the Court allow the Government to withdraw its exhibits, R. 105-1 through 105-8, and defer ruling on the unsealing of the Defense's Exhibits, R. 94-A through 94-C, until after the evidentiary hearing on June 20, 2024.

In a second motion (R. 127), Naser moves to reclassify nearly all the discovery materials that were designated as "sensitive" to "general." Notably, of the three productions at issue in the defendant's motion, only 5% of the Government's discovery materials were marked "sensitive."

The Government produced 3322 separate files (including documents, recordings, and images) in the first three productions. Of these, only 174 files (just over 5%) were marked "sensitive." Naser has asked for 124 of these 174 (over 71%) to be moved to general discovery.

Naser now asks the Court to review each of these 124 documents and determine whether good cause exists for the designation of each document.[5] The parties engaged in discussions regarding the reclassification of these materials, but the Government encountered two

---

[5] The vast majority of the items in Sealed Defense Exhibit A are grand jury materials protected by Federal Rule of Criminal Procedure 6(e). Because Naser has repeatedly expressed his intent to share information and has in fact shared information he obtained from the Government's discovery materials with others, Government counsel expressed concerns that placing these materials into general discovery would violate Rule 6(e). Despite these concerns, the Government offered to change the designation if Naser agreed in writing not to share those documents with others.

significant obstacles. First, Naser wants 71%—the vast majority of the sensitive materials—reclassified, rendering the protective order moot, and giving him unimpeded access to the discovery, and, second, Naser is unwilling to agree not to share the content of the sensitive materials with third parties. Consequently, no agreement has been reached.

Naser claims that he needs the exhibits unsealed to satisfy the public's interest in the proceedings, and that he needs access to the sensitive documents to work on his defense with his counsel. But his communications with Aaronson and others tell a different story. His improper motive is to release a documentary that will taint the jury pool and undermine the fairness of the trial. He seeks to generate favorable pretrial publicity through the production of a documentary titled "How the FBI Manufactures Terrorism,"[6] arguing that the FBI creates fake terrorist cases through entrapment and the use of informants.[7]

---

[6] February 26, 2024, jail call with Aaronson: "I want to have access to my discovery unimpeded."

[7] A valid entrapment defense requires evidence of both government inducement to commit the crime and a lack of predisposition. *Mathews v. United States*, 485 U.S. 58 (1988), *United States v. Nelson*, 922 F.2d 311, 317 (6th Cir. 1990). Naser will not be able to demonstrate either.

Unlike news articles, which are often brief, cautious, and offer a superficial examination of an event, documentaries are powerful vehicles for presenting a narrative, evoking strong emotions, and creating a long-lasting impression of the subject matter. Documentaries, especially ones made through the lens of only one side of a dispute, may present a biased or one-sided view, focusing on a specific perspective and leaving out important information.

The protective order does not unreasonably interfere with Naser's access to sensitive discovery materials, his right to counsel, or his right to a public proceeding. Like the sealing order, it protects witnesses, law enforcement techniques, and the legal process.

## Argument

### A. Public Access to Exhibits

While Naser cites out-of-circuit cases, the key case in the Sixth Circuit on public access to exhibits in a criminal case is *United States v. Beckham*, 789 F.2d 401 (6th Cir. 1986). In *Beckham*, members of the news media appealed a decision from this district denying them permission to copy exhibits admitted during a jury trial, including tape-recordings and documents. The Sixth Circuit concluded that while the

6

"Constitution requires that members of the public and the media have the opportunity to attend criminal trials and to report what they have observed," there is no constitutional right to access the exhibits. *Id.* at 409 (*citing Nixon v. Warner Communications*, 435 U.S. 589, 610 (1978)).

The Sixth Circuit then considered the common-law right to inspect and copy public record and documents. The Court noted that "this right is not absolute and that a court may exercise supervisory powers over the materials in its custody." *Id.* (*citing Warner Communications*, 435 U.S. at 1311). While the Court acknowledged that there is a presumption in favor of access, it rejected other circuits' position that only extraordinary reasons justify a restriction on the common-law right. *Id.* at 414. Rather, it noted the trial judge's "responsibility to provide the fair trial that the Constitution guarantees" and "to preserve the integrity of the verdict and judgment." *Id.* at 415. Likewise, the Supreme Court has warned that access could be denied "where court files might . . . become a vehicle for improper purposes." *Warner Communications*, 435 U.S. at 598.

That concern certainly applies here. Notably, unlike in most previous cases, this motion was not filed by members of the media

seeking access to a trial that has attracted public attention. Local media

has not significantly focused on this case and has not complained about

lack of access. On the contrary, as extremism researcher and noted

proponent of public access to court records Seamus Hughes noted in one

of the rare articles discussing this case, the Government has provided

significant background on its investigation in public filings, constituting

an "extremely rare . . . window into the ebbs and flows of a years-long

terrorism investigation."[8] Naser, however, seeks the unsealing of the

documents in this case for a different purpose. Specifically, to sway

public opinion in his favor and taint the jury pool against the FBI by

publicizing and sensationalizing the FBI's investigative techniques in

terrorism cases through the production of a one-sided documentary.

That is an improper purpose.

As the Supreme Court and the Sixth Circuit have instructed,

factors this Court should weigh in deciding whether to unseal include

"the amount of benefit to the public from the incremental gain in

---

[8] Robert Snell, "Aws Naser, accused Metro Detroit bombmaker, comes
into focus in rare look at terror case," The Detroit News, April 8, 2024
(available at https://www.detroitnews.com/story/news/local/wayne-
county/2024/04/08/fbi-offers-rare-look-at-isis-terror-probe-as-aws-naser-
fights-evidence/73038930007/).

knowledge that would result [in unsealing], the degree of danger to the [the people featured in the exhibits], the possibility of improper motives on the part of the media such as promoting public scandal or gratifying private spite, and any special circumstances in the particular case." *Beckham*, 789 F.2d at 409; *see also Mirlis v. Greer*, 952 F.3d 51 (2nd Cir. 2020) (the Court must consider motives for obtaining, and intent in releasing evidence, as well as the privacy interests of non-party witnesses when balancing the weight of the presumption of access).

Amount of benefit to the public: The public will not gain significant additional knowledge. It will already learn all the pertinent facts from the public filings and upcoming evidentiary hearing.

Degree of danger: As discussed in more detail below, the potential harms to the people mentioned in the exhibits may be great. Government's Exhibit 5 includes reports of witness interviews prepared by FBI agents, called "302s." Some of these reports contain private information about witnesses' health, family, or marital status. Releasing this information to the public at the same time as a documentary publicly accuses these witnesses of Islamophobia,

"manufacturing terrorism," and otherwise being part of alleged FBI misbehavior, may put these witnesses in real danger.

Improper motives: The Court should consider the possibility of improper motives on the part of the media "such as promoting public scandal or gratifying private spite." *Beckham*, 789 F.2d at 409. In this case, Naser's motive is exactly what the Supreme Court and Sixth Circuit have warned about. He seeks to cause public scandal and outrage at the FBI for "manufacturing terrorism" and gratify private spite against the FBI that he has held for over a decade for foiling his plans to join a terrorist organization and arresting others who had the same goal.[9]

Special Circumstances: As the Second Circuit has noted, courts "should give added weight to fair trial and privacy interests where requiring disclosure will have a potential chilling effect." *Matter of New York Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987). Here, the potential chilling effect is real. The Government submitted its exhibits with the

---

[9] On January 4, 2013, Naser admitted to agents that he published a video labeling PERSON A an FBI informant (on January 3, 2013) in retaliation for being denied boarding on January 2, 2013. He also stated that, when he was previously denied boarding on November 7, 2012, he decided to "expose" the FBI's efforts to "entrap" him.

expectation that they would remain under seal. It did not have to submit any of these exhibits at all. As the Government argued in its response, R. 105, the issues raised by Naser's motions are legal issues that did not require significant factual development. Because Naser was a parolee who had provided knowing written consent to search his property, the Government did not need to justify its search except to show that it was not done for harassment.

Nevertheless, the Government provided a detailed factual background of the search. It also provided evidence, including written reports of witness interviews, which it was not even required to provide in discovery, so that the Court and the defense had a fulsome picture of the search and to aid all parties in having a productive and efficient evidentiary hearing if required. The Government included these documents as exhibits only because they would be filed under seal. Unsealing these documents now will discourage parties from ever attaching such documents to their motions, which will decrease the efficiency of court proceedings.

The 302s in Government's Exhibit 5 are especially concerning. These are <u>not</u> statements of the witnesses themselves, they do not fall

under the Jencks Act or Rule 16, and consequently, they will be inadmissible at trial as substantive evidence or for impeachment.[10] *See Palermo v. United States*, 360 U.S. 343, 352 (1959) (In enacting the Jencks Act, "Congress was concerned that only those statements which could properly be called the witness' own words should be made available to the defense for purposes of impeachment"); *United States v. Carroll*, 26 F.3d 1380, 1391 (6th Cir. 1994) (notes that are not a substantially verbatim transcript are not Jencks material). This is because the witnesses did not write these reports or review them for accuracy and adopt them in any way. *See United States v. Nathan*, 816 F.2d 230, 236-237 (6th Cir. 1987) (an FBI 302 report of a witness's statement is discoverable only "if the notes from the interview were read back to and verified by the witness and if the report summarized the notes without material variation.").

---

[10]  18 U.S.C. § 3500(e) and Rule 26.2(f) limit Jencks-producible statements to those which may fairly be said to be the witness's own statements: (a) a written statement that the witness makes and signs, or otherwise adopts and approves; (b) a substantially verbatim, contemporaneously recorded recital of the witness's oral statement contained in any stenographic, mechanical, electrical or other recording or transcription; or (c) a witness's grand jury testimony, however recorded.

Because the 302s contained in Exhibit 5 are not witness statements as defined under the Jencks Act, it would be improper to impeach these witnesses with the 302 reports that cannot fairly be called the witnesses' own words. *See Palermo*, 360 U.S. at 352 (summaries of oral statements which are selective, or which contain an agent's "interpretations or impressions" are "not to be produced."); *United States v. Lamma*, 349 F.2d 338, 340 (2d Cir. 1965) ("Congress intended to restrict defense access to statements of government witnesses, for purposes of impeachment, to those statements for which the witness and not the government agent is responsible, so as to avoid the unfairness that results from the use of distorted and inaccurate material."). Consequently, these documents would be inadmissible in trial and do not even have to be produced under discovery rules.[11]

Defendant's motion to suppress evidence was premised not on facts, but on "inferences" that he hoped to "confirm" at an evidentiary hearing. R. 94 at PageID# 574. The Government's response emphasized that, even if the Defendant's inferences were correct, suppression was

---

[11] The Government intends to file a motion *in limine* seeking to prohibit the use of these 302s for impeachment of the witnesses discussed in them at trial.

not warranted as a matter of law. However, because the inferences were false, exhibits were appended to the Government's response to provide the Court with a complete factual background of the case and promote efficiency at any hearing. Including them as exhibits likely also helped the defense determine their witnesses for the evidentiary hearing and will certainly help the defense prepare their examinations.

The Court should not discourage the Government from attaching future reports to its motions by unsealing these.

Because the witnesses did not review or adopt these reports, and the statements in the reports cannot fairly said to be the witnesses' own statements, it would be unfair and improper to impute the law enforcement agents' words to the witnesses. Unsealing these reports would open these witnesses to reporting targeted at them for things they may not have said. The Sixth Circuit has explained that "it would be grossly unfair to allow the defense to use a statement to impeach a witness which could not fairly be said to be the witness' own rather than a product of the investigator's selections, interpretations, and interpolations." *United States v. Williams*, 962 F.2d 1218, 1224 (6th Cir. 1992). It would be even more unfair to allow that impeachment to

happen outside of court, through a journalist who seeks to "expose" the "egregious" case against Naser in a documentary, and with the witness not being on the witness stand with a chance to immediately respond.

Moreover, these reports contain information that raise privacy concerns about, for instance, a witness's health, family, or marital status.[12] As another district court in this circuit has noted, "the privacy rights of disinterested, uninvolved third parties whose names, images, and other personal information are included in certain exhibits weigh against allowing inspection and copying of the portions of those exhibits containing protected personal information." *United States v. Dimora*, 862 F. Supp. 2d 697, 707 (N.D. Ohio 2012). Courts that have required disclosure of exhibits that contain such private information have first allowed for its redaction.

The potential effects of unsealing these documents are great. Parties are unlikely to attach interview reports to future motions. More concerningly, witnesses might not be willing to be interviewed at all, or they may withhold private information regarding their health, family,

---

[12] In a recent jail call, Naser and Aaronson discussed a sexual assault involving a witness's family member and expressed an interest in learning more background details connected to it.

or other sensitive information, or to have notes be taken of their interviews, knowing that those notes could become public. Naser's documentary is not worth that risk. If the media is interested in what these witnesses have to say, it is welcome to attend the hearing itself, where the Court can first decide the relevance of any such private information before allowing testimony on it.

Accordingly, the Government requests that the Court allow it to withdraw its sealed exhibits, R. 105-1 through 105-8, to protect witnesses as well as sealed proceedings and law enforcement techniques. The Government further requests that the Court not rule on Naser's request to unseal the defense exhibits until the evidentiary hearing on the suppression motion is held. Some of the exhibits in question may be admitted as exhibits in that hearing and witnesses may be questioned about them. In that case, anyone who wants information about those documents could attend the hearing or order a transcript. Unsealing of these documents may not be necessary because in court testimony would already be available to the public. *Beckham*, 789 F.2d at 414–15. Thus, waiting until after the hearing may narrow or even moot this dispute.

16

## B. Sensitive Documents

The Court should reject Naser's attempt to nullify the protective order that all parties agreed to at the start of the case. While the Government is willing to share some of the documents with Naser, it is not willing to hand them over to a journalist, which is effectively what Naser is seeking. Doing so would violate grand jury secrecy rules.

Most of the documents Naser seeks to move from sensitive to general discovery in this motion were obtained by a federal grand jury as part of its investigation. Under Federal Rule of Criminal Procedure 6(e), the Government is required to keep grand jury proceedings secret, disclosing them only as necessary to fulfill its obligations. The Government does not object to providing these documents to Naser for use to prepare his defense if he commits to protecting the documents as required by the rules. He will not do so. Instead, he aims to publicize them.

Federal criminal discovery rules exist "to encourage the disclosure of information and materials to avoid unnecessary surprise and to level the playing field". *United States v. Smith*, 985 F.Supp. 2d 506, 520 (S.D.N.Y. 2013). The rules "are meant to foster 'the use of compulsory

process to facilitate orderly preparation for trial, not to educate or titillate the public.'" *Id.* at 521 (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir.1982)). Pre-trial discovery, "unlike the trial itself, is usually conducted in private." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir.1999). *See also Bond v. Utreras*, 585 F.3d 1061, 1074 (7th Cir.2009) ("At common law, pretrial proceedings were closed to the public, and the federal discovery rules have not changed this common-law tradition." (citation omitted)); *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir.1986) ("Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation. That is why parties regularly agree, and courts often order, that discovery information will remain private."). Allowing the public unfettered access to discovery materials can hinder the discovery process, taint the jury pool, and undermine the fairness of the trial. *Id. See also United States v. White*, No. 04–CR–370, 2004 WL 2399731, at *5 (E.D.Pa. Sept. 22, 2004) (noting that "[i]f the prosecutors and/or defense counsel had a practice of disclosing discovery

materials to the media, this could be disruptive to a fair trial for all parties.").

Another major category of documents Naser seeks consists of physical surveillance logs. Although Naser's current motion requests only two such logs, he has also asked the Government to move 29 other surveillance-related documents in later discovery productions from sensitive to general discovery. This surveillance is generally conducted by the FBI's Special Surveillance Group ("SSG"). The SSG is a highly confidential FBI unit of investigative specialists who conduct covert surveillance as part of investigations. While specific results of surveillance may be disclosed as parts of various trials, SSG information is generally carefully protected. Public knowledge of SSG techniques would allow criminals to develop more effective counter-surveillance techniques. For this reason, and for their safety, courts frequently approve special protections for witnesses who work for SSG. *See, e.g.*, *United States v. Alimehmeti*, 284 F. Supp. 3d 477 (S.D.N.Y. 2018).[13]

---

[13] The United States intends to ask for such protections for any SSG personnel who may testify at trial.

Publicizing over 30 documents related to physical surveillance in one investigation will paint a picture of how SSG functions and what it is able to witness. People seeking to avoid surveillance can put that information together with other information they may have to craft sophisticated countersurveillance techniques. Although. as the defense claims, the fact that Naser was surveilled is no secret, and the techniques used by SSG are not necessarily sophisticated, the Court should not bless the addition to public knowledge of the techniques, capabilities, and limitations of the FBI's physical surveillance.

The Government is prepared to conduct further discussions over moving additional documents to general discovery. The Government has taken care to put as many documents in general discovery as it could, with almost 95% of the productions at issue in this motion marked as general. Naser seeks to increase that number to over 98%. The Government can meet him in the middle if he agrees to keep the documents to himself instead of using them in his planned documentary. He refuses to do so.

## C. Conclusion

As demonstrated by the multiple suppression motions filed recently, Naser's attorneys have been able to prepare his defense by freely using the thousands of documents in general discovery and using within the limits prescribed in the protective order the several hundred that are sensitive. He can vigorously defend his case with the current sealing and protective orders intact. The only thing he is hampered from doing is making a documentary that will distract from the trial and potentially taint the jury pool. This Court should not allow such a distraction from the important issues in this case.

Respectfully submitted,

DAWN N. ISON
United States Attorney


*/s/ Saima S. Mohsin*
SAIMA S. MOHSIN
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
Saima.Mohsin@usdoj.gov
(313) 226-9100

*/s/ Dmitriy Slavin*
DMITRIY SLAVIN
Trial Attorney

21

National Security Division
Dmitriy.Slavin@usdoj.gov

Date:        May 29, 2024

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 29 , 2024, I electronically filed the

foregoing paper with the Clerk of the Court using the ECF system

which will send notification of such filing to the parties of record.


*/s/Dmitriy Slavin*
Dmitriy Slavin
Trial Attorney
950 Pennsylvania Ave NW, Suite 7600
Washington, DC 20530
Dmitriy.Slavin@usdoj.gov
(202) 616-2846

Date: May 29, 2024