UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,                          CR. NO. 22-20504

v.                                             Hon. Jonathan C. Grey

AWS NASER,

          Defendant.

**NOTICE OF REQUEST FOR DISCLOSURE OF
SURREPTITIOUS OR COVERT SEARCHES**

      Aws Naser believes the Court is in the position of evaluating whether the Government should provide certain information the defense (or not) in advance of the upcoming evidentiary hearing on June 20, 2024. To make a record, Aws Naser files this notice requesting the Court to disclose any materials that are relevant to the testimony of any witnesses at the hearing, or relevant to the question whether the repeated warrantless searches of Naser's home and electronic devices violated the Fourth Amendment. In aid of the Court's review, Naser provides:

1. This Court has scheduled an evidentiary hearing in this case for June 20, 2024. Naser and the government each anticipate calling five witnesses.[1]

---

[1] Per emails between the parties, the anticipated witnesses are: Cynthia Simon, Derrick Bond, Timothy Reintjes, Charles Wright, Megan McAteer, Leslie Larsen, Mark Davidson, Milan Sucevic, Karly Wood, and Jeff Helias.

1

2. One of the key witnesses under subpoena is retired Task Force Officer Charles Wright. While working to have Naser federally prosecuted, he performed numerous warrantless searches. (Gov't Sealed Ex. 5, filed with ECF No. 105.) Back in 2017, Wright testified at Naser's parole hearing. With his notes in front of him, and ongoing permission to reference them throughout the hearing, Wright testified that he had gone to Naser's residence, "a guesstimation, about five, maybe six" times. And that he searched the residence "every time."[2]

3. In discovery provided to date, Naser is aware of only three searches of his home where Wright was present: May 19, 2017, August 16, 2017 and October 19, 2017.[3] But those were just the searches reported in MDOC records. Wright, it turns out, was a federal TFO. Was he performing or observing *other* searches of Naser's property or devices? Due to the government's FISA notice, and its invocation of CIPA and ex parte proceedings, Naser does not know the answer to this question.

4. To the extent there were surreptitious or covert searches – particularly ones where state law enforcement, Michigan Department of Corrections Officers, or Task Force Officers were involved – Naser is entitled to that information and hereby renews his request for their disclosure (*see* ECF No. 73.). That information will be

---

[2] The government produced the Naser's parole hearing at Bates 1448, as an audio file (with no transcript). Due to the  Due to the size of the file, defense counsel is not attaching it as an exhibit, but can provide the court with the audio if requested.

[3] Wright was also present for the October 30, 2017 search, but claims to have only observed those searches. These searches are detailed in the factual portion of Naser's Motion to Suppress (ECF No. 94).

necessary for Naser's presentation at the June 20 hearing, and critical for this Court to evaluate the questions presented by Naser's motions.

5. A key issue at the upcoming hearing will be Charles Wright's role in the FIB's investigation of Naser. If agents, possibly including TFO Charles Wright, used illegal methods to search Naser's residence or devices, the fruits of those illegal searches would be subject to suppression. Certainly, the information is at a minimum necessary for Naser's effective examination of these witnesses.

6. The government has provided notice of their intent to use foreign intelligence surveillance information in this case. (ECF No. 24.) This notice informed the defense that the government has FISA evidence "obtained or derived from electronic surveillance and physical search [sic]" but provided no other details.

7. The Court may disclose FISA-related materials to the defense if, without defense input, it "is unable to make an accurate determination as to the legality of the evidence." *United States v. Daher*, No. 18-20559, 2020 WL 7664789, at *2 (E.D. Mich. Dec. 24, 2020). In the course of evaluating materials in camera and ex parte, this Court "may disclose to the aggrieved person [here, Naser], under appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the surveillance only where such disclosure is necessary to make an accurate determination of the legality of the surveillance." 50 U.S.C. § 1806(f).

8. "In determining whether disclosure is necessary, the Court should consider whether, after its initial review, any irregularities are revealed, such as whether: the materials evidence a possible misrepresentation of fact; the persons to be surveilled are not clearly identified; or the surveillance records include a significant amount of nonforeign intelligence information, indicating a possible issue with the minimization standard utilized." *United States v. Mahamud*, 838 F. Supp. 2d 881, 885 (D. Minn. 2012).

9. This case presents unique circumstances, where the FBI used Task Force Officers who were also members of local law enforcement/Michigan Parole Agents to work up the case against Naser. But FISA does not authorize surveillance or searches for the purpose of investigating domestic criminal activity. *United States v. Daoud*, 761 F.3d 678, 682 (7th Cir. 2014). The Court also has to consider whether the government properly certified that the information sought through the FISA process could not "reasonably be obtained by normal investigative techniques" (50 U.S.C.A. § 1823) and whether the government conducted its surveillance in accordance with FISA minimization procedures (50 U.S.C. § 1823(a)(3)).

10. Importantly, even assuming the government needed to use the secret FISA process initially, this Court must determine whether that need for secrecy still exists. *See United States v. Warsame*, 547 F. Supp. 2d 982, 989 (D. Minn. 2008).

11. Naser has already filed a motion to disclose and suppress FISA materials. (ECF No. 73.) He renews that request, with a more specific and urgent basis: to the

4

extent there are materials relevant for Naser's effective examination of witnesses at the June 20 hearing, and this Court's evaluation of the issues presented, Naser requests the disclosure of those materials in advance of the June 20 hearing.

12. Counsel conferred with the government regarding this filing, pursuant to Local Rule 7.1. The government has no comment at this time.

Respectfully submitted,

**FEDERAL COMMUNITY DEFENDER**

s/Amanda Bashi & James Gerometta
JAMES GEROMETTA & AMANDA N. BASHI
Attorneys for Aws Naser
613 Abbott Street, Suite 500
Detroit, Michigan 48226
(313) 967-5842
james_gerometta@fd.org / amanda_bashi@fd.org

Dated:  June 14, 2024

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 14, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the parties of record.

      Signed,

      s/Amanda N. Bashi

Dated:  June 14, 2024